UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Criminal Action No. 06-cr-00431-MSK

UNITED STATES OF AMERICA,

        Plaintiff,

v.

1. RIGOVERTO VALLE-SIERRA,
   a/k/a "Jorge,"
2. JOSE ALFREDO SANCHEZ-GUSMAN,
   a/k/a Jose Alfredo Guzman,
   a/k/a "Macaco,"
3. BOGAR GONZALEZ-ITUARET,
   a/k/a Bogar Gonzalez-Ituarte,
   a/k/a "Hugo,"
   a/k/a Pedro Torres,
4. MARTIN GOMEZ-BERRERA,
   a/k/a Martin Gomez-Barrera,
   a/k/a "Huevo,"
   a/k/a "Huevito,"
   a/k/a Mario Alberto Osuna-Cuen,
5. FERNANDO VALENZUELA-SOTO,
   a/k/a Roberto Martinez-Beltran,
   a/k/a Mario Alberto Ozuna,
   a/k/a Mario Alberto,
   a/k/a "Jaime,"
   a/k/a Jose A. Zasueta,
   a/k/a Juan Al Parra,
   a/k/a Jaime Martinez-Beltran,
   a/k/a "Juan,"
   a/k/a 'Cameleon,"
   a/k/a "Sinola,"
6. HECTOR JESUS ZAMUDIO-TOLOZA,
   a/k/a Hector Jesus Zamudio-Tolosa,
   a/k/a "Tecate,"
7. JOSE QUINTANA,
   a/k/a "Chapo,"
   a/k/a "Chepo,"
   a/k/a 'Chepaneco,"

8. MICHAEL JAMES OVALLE,
   a/k/a Martin Ybarra-Mendoza,
9. ISMAEL GARCIA,
10. ELIZABETH MARCHAND,
    a/k/a Elizabeth Rodriguez,
11. MONICA ESTRADA,
    a/k/a Beatriz Delgado-Rodriguez,
12. AGUSTIN MAGANA-BERMEO,
13. LARRY JOE HERNANDEZ,
14. OMAR VALLE-SIERRA,
    a/k/a Omar Valle,
15. DEBBIE LEE MADRID,
    a/k/a Debbie Madrid,
16. LETICIA MOCTEZUMA,
    a/k/a "Lety,"
17. CHRISTINA FERNANDEZ-MOLINA,
    a/k/a 'Guera,"
18. ROBERT JOSE CERVANTES JR.,
19. ENEAS CAMACHO-DOMINGUEZ,
20. VINCE BENAVIDEZ, and
21. LUIS LUNA,
    a/k/a "Juan,"

    Defendants.

# OPINION REGARDING
# JAMES PROFFER

THIS MATTER comes before the Court on the Government's *James*[1] proffer (**#712**) and the Defendants' objections[2] thereto. Having considered the same, the Court

**FINDS** and **CONCLUDES** that:

---

[1] *United States v. James,* 590 F.2d 575, 582 (5th Cir. 1979).

[2] The Defendants' objections were incorporated into the original proffer (**#593**) filed with the Court on November 13, 2007. For reasons which are not apparent, their objections were omitted from the revised proffer filed by the Government on February 14, 2008. The only difference between the revised and original proffers is that the Government has abandoned several of the statements it originally proffered. Thus, the Court assumes that the Defendants would make the same objections to the revised proffer.

Count 1 of the Indictment charges each Defendant with conspiracy to distribute, and to possess with intent to distribute, controlled substances. As the result of several plea agreements entered into between the Government and various Defendants, only six Defendants await trial: Jose Alfredo Sanchez-Gusman, Bogar Gonzalez-Ituaret, Fernando Valenzuela-Soto, Larry Joe Hernandez, Eneas Camacho-Dominguez, and Luis Luna.[3] Against these six Defendants, the Government intends to offer statements made by all twenty-one Defendants in this case, and by other declarants, under Fed. R. Evid. 801(d)(2)(E).[4] The Defendants contend that the statements are inadmissible because the Government cannot establish a conspiracy, that the declarants were members of the conspiracy, or that the statements were made during the course or in furtherance of the conspiracy.

### I. Rule 801(d)(2)(E)

Ordinarily, hearsay statements are not admissible. However, Fed. R. Evid. 801(d)(2)(E) creates an exception where the out of court statement is offered against a party and is made by "a coconspirator of a party during the course and in furtherance of the conspiracy." In order for the exception of Rule 801(d)(2)(E) to apply, there must be: "(1) a conspiracy, (2) in which both the declarant and the defendant were members, and (3) the declarant's statements were made in the course of and in furtherance of the conspiracy." *See United States v. Owens*, 70 F.3d 1118, 1123

---

[3] Defendant Leticia Moctezuma has not entered into a disposition, but she has not yet been arraigned and is considered to be a fugitive.

[4] The Government's proffer includes statements made by an undercover officer (Statements #1, 4, 213, 275, 356-357, 383, 400, 403-404, 823, 826, 829-831, 835, 838, 842-844, 846, 869, 871, 873, 875-881, 885, 891-892, 894-897, 900, 902-911, 913-914, 916-920), unidentified individuals (Statements #54, 102, 154, 248, 486, 698, 819), and an individual named Jesus Manuel Avendano-Macias (Statements #664, 681, 767, 807, 811, 860). However, the Government does not contend that these declarants were members of the conspiracy. Thus, their statements do not fall within Rule 801(d)(2)(E).

(10th Cir. 1995).

A statement by a defendant can be sufficient, by itself, to tie that person to a conspiracy. Fed. R. Evid. 801(d)(2)(A). However, according to Rule 801(d)(2), the contents of a declarant's statement do not alone suffice to establish a conspiracy in which both the declarant and the defendant participated, such that the declarant's statement can be used against the defendant. *See* Fed. R. Evid. 801(d)(2) advisory committee's note, 1997 Amendment. In such event, there must be evidence apart from the statement of the declarant which corroborates the existence of the conspiracy and the defendant's participation in it. *See United States v. Rascon,* 8 F.3d 1537, 1541 (10th Cir. 1993).

In the Tenth Circuit, a court may address whether a declarant's statement(s) falls within Rule 801(d)(2)(E) in either of two ways. A court may hold a pre-trial evidentiary hearing before impanelment of the jury and determine whether the statement falls within Rule 801(d)(2)(E). *See United States v. Gonzalez-Montoya*, 161 F.3d 643, 649 (10th Cir. 1998). Alternatively, a court may accept a proffer from the Government and determine whether the statement would fall within Rule 801(d)(2)(E). *Id.; see also United States v. Lopez-Gutierrez,* 83 F.3d 1235, 1242 (10th Cir. 1996). Either determination is provisional. At trial, the Government must prove the existence of the predicate conspiracy, and membership in it, before the statements become admissible.

The issue is before the Court in this case on a proffer by the Government that identifies evidence pertinent to the existence of a conspiracy, statements which it may seek to admit at trial, and objections by Defendants. In objecting to admission of the statements, the Defendants contend that the Government cannot establish a conspiracy, that the declarants were members of the conspiracy, or that the statements were made during the course or in furtherance of the

4

conspiracy.

## II. The Proffer

In determining whether the identified statements fall within Rule 801(d)(2)(E)[5], the Court assumes that the admitted evidence at trial will match the Government's proffer. The first inquiry is whether the proffered facts establish a conspiracy and who the co-conspirators are. The next question is whether the statements by declarants to be used against Defendants Sanchez-Gusman, Gonzalez-Ituaret, Valenzuela-Soto, Hernandez, Camacho-Dominguez, and Luna, were made during the course and in furtherance of the conspiracy.

A conspiracy to distribute, and to possess with intent to distribute, controlled substances is established by the following: (1) two or more persons (the members of the conspiracy) agreed to violate federal drug laws; and (2) the members of the conspiracy were interdependent, meaning that they intended to act together for their shared mutual benefit to violate federal drug laws. *See United States v. Evans,* 970 F.2d 663, 668 (10th Cir. 1992). Membership by a defendant in the conspiracy is established by the following: (1) the defendant knew about the agreement to violate federal drug laws; and (2) the defendant knowingly and voluntarily involved himself or herself in that agreement. *Id.*

If proved, the facts stated in the proffer would be sufficient to establish that there was a conspiracy among 19 of the named Defendants to possess with intent to distribute or to distribute cocaine and methamphetamine. The members of the conspiracy are: Defendants Rigoverto Valle-Sierra, Jose Alfredo Sanchez-Gusman, Bogar Gonzalez-Ituaret, Martin Gomez-Berrera, Fernando

---

[5] The only Defendants proceeding to trial are Jose Alfredo Sanchez-Gusman, Bogar Gonzalez-Ituaret, Fernando Valenzuela-Soto, Larry Joe Hernandez, Eneas Camacho-Dominguez, and Luis Luna.

5

Valenzuela-Soto, Hector Jesus Zamudio-Toloza, Jose Quintana, Michael James Ovalle, Ismael Garcia, Elizabeth Marchand, Monica Estrada, Agustin Magana-Bermeo, Larry Joe Hernandez, Omar Valle-Sierra, Debbie Lee Madrid, Leticia Moctezuma, Eneas Camacho-Dominguez, Vince Benavidez, and Luis Luna. According to the proffered evidence the involvement of these Defendants was as follows:

Defendant Rigoverto Valle-Sierra (Mr. Valle-Sierra) sold cocaine and methamphetamine to various buyers, sometimes with the participation of his brother Omar Valle-Sierra. One such sale was to an undercover officer, transacted on April 26 and May 3, 2006. According to the Government, this transaction provides the starting date of the conspiracy.

Mr. Valle-Sierra travelled to California to obtain the drugs, sometimes alone, and sometimes with Defendant Larry Joe Hernandez. Mr. Hernandez' involvement with Mr. Valle-Sierra was independently confirmed on October 16, 2006, when an undercover officer observed Mr. Hernandez driving a vehicle to a meeting place with Mr. Valle-Sierra. Mr. Valle-Sierra then gave the undercover officer $500 as a down payment for transporting drugs. This evidence, combined with the more than 190 telephone conversations between Mr. Hernandez and Mr. Valle-Sierra during the preceding 6-month period in which the two men discussed their drug distribution business, is sufficient to tie Mr. Hernandez to the conspiracy.

From wiretaps, federal agents learned that Mr. Valle-Sierra received controlled substances from individuals in Southern California. In California, Monica Estrada was one of the people who acted as a broker for Mr. Valle-Sierra. In one instance, DEA agents observed Ms. Estrada drive Mr. Valle-Sierra to the Greyhound bus station, and Mr. Valle-Sierra emerged from her car with a large black suitcase. Agents saw Mr. Valle-Sierra place the suitcase in the baggage compartment

of a bus, then he boarded the bus. On June 20, 2006, when the bus reached Grand Junction, Colorado, agents seized the suitcase and found that it contained five pounds of nearly pure crystal methamphetamine.

In another instance, Mr. Valle-Sierra ordered 8 pounds of crystal methamphetamine from Ms. Estrada by telephone, after an undercover officer placed an order for 5 pounds of the drug on July 28, 2006. Ms. Estrada and Defendant Agustin Magana-Bermeo then drove east and were intercepted by the California Highway Patrol near Barstow, California. The California Highway Patrol officers found an Elmo doll containing 4 pounds of methamphetamine.[6]

From a wiretap, federal agents learned that Ms. Estrada coordinated deals between Mr. Valle-Sierra and Defendant Fernando Valenzuela-Soto. Mr. Valenzuela-Soto also supplied substances to his son, Defendant Hector Jesus Zamudio-Toloza, for distribution to others, including Mr. Valle-Sierra. During surveillance, officers observed Mr. Valle-Sierra together with Mr. Zamudio-Toloza.

Mr. Valenzuela-Soto and Mr. Zamudio-Toloza were also in telephone contact with Defendants Martin Gomez-Berrera and Michael James Ovalle. Mr. Gomez-Berrera and Mr. Ovalle drove a vehicle that was pulled over by a Colorado State Trooper on September 29, 2006. Upon searching it, officers found 4.4 pounds of methamphetamine.

On October 11, 2006, Mr. Valenzuela-Soto was a passenger in a car driven by Defendant Ismael Garcia. Defendant Elizabeth Marchand was also a passenger. The car was loaded with methamphetamine (the quantity is not stated in the proffer). Following a traffic stop, these three

---

[6] In a separate ruling, the Court suppressed this evidence as to Mr. Magana-Bermeo, but not as to Ms. Estrada or any other Defendant.

Defendants were detained, and each made statements implicating the others.

Another of Mr. Valle-Sierra's drug suppliers was Defendant Jose Alfredo Sanchez-Gusman. With regard to the July 28, 2006 order for 5 pounds of crystal methamphetamine made by the undercover officer, Mr. Valle-Sierra also ordered 8 pounds of the drug from Mr. Sanchez-Gusman. Officers conducting surveillance observed Mr. Sanchez-Gusman and Defendant Bogar Gonzalez-Ituaret traveling together to the Greyhound bus station in Los Angeles, but when these Defendants got there, they acted as if they did not know each other. When it was time to board the bus, Mr. Sanchez-Gusman wished Mr. Gonzalez-Ituaret luck and they parted ways. One of the two men (it is unclear who, but it appears to have been Mr. Gonzalez-Ituaret) then placed a duffle bag into the bus and boarded it. Law enforcement officers stopped the bus, seized the duffle bag, and found 7.6 pounds of methamphetamine in the bag.

Agents observed Mr. Sanchez-Gusman and Mr. Gonzalez-Ituaret a second time. They arrived at the Los Angeles bus depot, and Mr. Sanchez-Gusman brought a black suitcase which was loaded onto the bus. Mr. Gonzalez-Ituaret boarded the bus. Law enforcement officers stopped the bus in Las Vegas, Nevada, and seized the bag. The bag contained 4 pounds of methamphetamine.

Mr. Valle-Sierra also had dealings with Defendant Eneas Camacho-Dominguez. They had several telephone conversations. Mr. Camacho-Dominguez once ordered "the same thing" from Mr. Valle-Sierra by telephone, then police officers searched his home and found 3 ounces of methamphetamine. In another conversation, Mr. Camacho-Dominguez told Mr. Valle-Sierra that "he needed good people to cure sick people," after which the two arranged to meet.

Defendant Leticia Moctezuma made a series of calls to Mr. Valle-Sierra to inquire

whether he received money she sent to him, and to discuss future shipments of money. In one call, she expressed her opinion that it was "pretty bad" that Mr. Valle-Sierra "was left with nothing and had to start over again." In another, they talked about the possibility that narcotics officers were outside of her residence. In yet another, she talked about preparing "the job." She also talked about the drugs themselves.

Defendant Luis Luna had several conversations with Mr. Valle-Sierra. Mr. Luna once contacted Mr. Valle-Sierra to see if he would be returning to California for more work. Other conversations between these two men show that Mr. Luna was planning a trip and would see Mr. Valle-Sierra when he returned. They also had several conversations about Mr. Luna's car and license plates. In one conversation, Mr. Luna asked Mr. Valle-Sierra "how many" he wanted, and Mr. Valle-Sierra responded, "four girls." Mr. Luna then advised he was on his way. From these conversations, it can be inferred that Mr. Luna worked as a courier for Mr. Valle-Sierra.

Defendant Vince Benavidez was a customer of Mr. Valle-Sierra and made numerous contacts with him by telephone. In their conversations, Mr. Benavidez and Mr. Valle-Sierra frequently talked about quantities of the "yellow" and the "white" which Mr. Benavidez needed, as well as how much they cost.

Defendant Debbie Lee Madrid was Mr. Valle-Sierra's common law spouse. From telephone conversations, officers learned that Ms. Madrid sometimes directed individuals to pick up drugs or deliver money in payment for the drugs. In one telephone conversation, Ms. Madrid talked about needing "seven ounces," which appears to be a reference to a drug quantity.

As for Defendant Jose Quintana, he had several conversations with Mr. Valenzuela-Soto in which they discussed large drug quantities, the arrival of "snow white," the weighing of drugs,

and payment for them. In addition, the Government proffers that Mr. Zamudio-Toloza distributed drugs to Mr. Quintana.

However, the Court finds the facts stated in the proffer to be insufficient to establish that Defendants Robert Jose Cervantes, Jr. or Christina Fernandez-Molina were members of the conspiracy. Mr. Cervantes once bought 5 ounces of cocaine from Mr. Valle-Sierra after calling him on the telephone. Ms. Fernandez-Molina once ordered half an ounce of cocaine, which officers later seized during a traffic stop. She also had approximately half a dozen telephone conversations with Mr. Valle-Sierra, but all of them appeared to be for the purpose of placing personal orders – *e.g.*, to see "if he had the weed she asked for," to ask "for another half of the one she likes," or to ask for "the powder one she likes." The Court cannot determine from the proffer whether Mr. Cervantes or Ms. Fernandez-Molina bought drugs for their personal use, or whether they were dealers working for Mr. Valle-Sierra. Because non-dealer drug users are generally not considered to be co-conspirators, the proffer fails to show that either Mr. Cervantes or Ms. Fernandez-Molina were members of the conspiracy. *See United States v. Wright,* 506 F.3d 1293, 1299 (10th Cir. 2007) (addressing buyer-seller rule). Thus, the proffer is insufficient to show that their statements are co-conspirator statements subject to Rule 801(d)(2)(E) which can be used against Defendants Sanchez-Gusman, Gonzalez-Ituaret, Valenzuela-Soto, Hernandez, Camacho-Dominguez, and Luna at trial.

Accordingly, as to the Defendants who are proceeding to trial, all of the identified statements[7] of Defendants Rigoverto Valle-Sierra, Jose Alfredo Sanchez-Gusman, Bogar

---

[7] The Government's *James* proffer contains hundreds of enumerated "statements." However, all of the so-called "statements" are actually groupings of statements made during various conversations.

Gonzalez-Ituaret, Martin Gomez-Berrera, Fernando Valenzuela-Soto, Hector Jesus Zamudio-Toloza, Jose Quintana, Michael James Ovalle, Ismael Garcia, Elizabeth Marchand, Monica Estrada, Agustin Magana-Bermeo, Larry Joe Hernandez, Omar Valle-Sierra, Debbie Lee Madrid, Leticia Moctezuma, Eneas Camacho-Dominguez, Vince Benavidez, and Luis Luna, <u>except</u> for Statements #8, #117 and #344 would fall within the provisions of F.R.E 801(d)(2)(E).

Although the proffer shows that Statements #8, #117 and #344 were made by co-conspirators (Mr. Valle-Sierra, Mr. Luna and Ms. Madrid) it is not clear that such statements were made during the course and in furtherance of the conspiracy. In Statement #8, Mr. Valle-Sierra's statements pertained to his failed urinalysis test result. Mr. Luna made casual conversation about it and advised Mr. Valle-Sierra to keep getting tested. In Statement #117, Mr. Valle-Sierra spoke of the need for somebody to give his brother Omar a ride, and that he would have Omar give Ms. Madrid some money. Ms. Madrid said she would provide the transportation. Because Mr. Valle-Sierra and Ms. Madrid were married, their statements are facially innocuous. Statement #344 appears to be a social call setting up a meeting.

Dated this 21st day of March, 2008

**BY THE COURT:**

*Marcia S. Krieger*
_____

Marcia S. Krieger
United States District Judge